2003-2004 LABOR AGREEMENT OF THE
AMERICAN FEDERATION OF STATE,
COUNTY AND MUNICIPAL EMPLOYEES
AND THE
CITY OF MARION, INDIANA

## PREAMBLE

This agreement entered into by the City of Marion, Indiana, hereinafter referred to as the "CITY", and Local 3063, Indiana Council 62, American Federation of State, County and Municipal Employees, AFL-CIO, hereinafter referred to as the "UNION", has as its purpose the promotion of harmonious relations between the CITY and the UNION; the establishment of an equitable and peaceful procedure for the resolution of differences; and the establishment of rates of pay, hours of work, and of the conditions of employment.

## ARTICLE I – RECOGNITION

SECTION 1. The CITY recognizes the UNION as the sole and exclusive bargaining agent for the purposes of negotiating salaries, wages, hours, and other conditions of employment, for the employees who are designated as within the bargaining unit. The CITY agrees that the UNION may contact the CITY in writing after the date of April 1, 2004, for the purpose of setting contract negotiations, which said notice shall be submitted jointly to the Mayor and the City Controller and the CITY shall have fourteen (14) days in which to furnish the UNION three (3) available dates to begin contract negotiations; thereafter, negotiations will continue in good faith until an agreement is reached.

SECTION 2. The bargaining unit for the purposes of this agreement shall be defined as STREET and SANITATION, TRAFFIC, AND FLEET MAINTENANCE EMPLOYEES of the CITY OF MARION, INDIANA. The UNION shall be represented in contract negotiations by its President, Vice-President, Secretary, Treasurer and the Indiana Council 62 Representative. The CITY will be represented by its duly appointed negotiation committee.

SECTION 3. The term "EMPLOYEE" shall include all Sanitation and Street Department drivers, operators, and drivers/laborers, signal techs, and mechanics.

SECTION 4. The term "EMPLOYEE" shall not include:

  A. Probationary employees, secretaries, bookkeepers, foremen, superintendents, and any part-time or temporary employees.

  B. Any elected officials.


EXHIBIT A

1

    C. Any managerial or supervisory personnel who have authority to take action in the interest of the CITY in such matters as hiring, transferring, suspending, laying-off, recalling, promoting, discharging, rewarding, or disciplining of their personnel. Any Union employee who is appointed to a supervisors position shall be required to withdraw from the Union after a 30 day grace period. The City shall no longer withhold dues from his/her pay.

    D. Any employee whose regular duties include contact with confidential information relating to the wages, hours and working conditions of other employees.

SECTION 5. The CITY shall permit the UNION to maintain a UNION provided file cabinet and desk on CITY property.

## ARTICLE II- MANAGEMENT RIGHTS

SECTION 1. In matters not specifically covered by language within this agreement, CITY and UNION through a labor management committee shall jointly attempt to resolve said disputes. Said committee, composed of two (2) representatives from each side, shall meet at least quarterly.

SECTION 2. The UNION recognizes that the CITY'S rights, powers and authority include, but are not limited to, the right to manage its operation, direct, select, decrease and increase the work force, including hiring, promotion, demotion, transfer, suspension, discharge or lay-off, the right to make all plans and decisions on all matters involving its operations, the extent to which the facilities of any department thereof shall be operated, additions thereto, replacements, curtailments or transfers thereof, removal of equipment, outside purchases of products or services, the scheduling of operations, means and processes of operations, the materials to be used, the right to introduce new and improved methods and facilities and to change existing methods and facilities, to maintain discipline and efficiency of employees, to prescribe rules to that effect, to establish and change standards, determine the qualifications of employees, regulate and run the department efficiently.

The UNION therefore, agrees that it and the employees will cooperate with the CITY to assure that such employee performs a fair day's work.

## ARTICLE III – STRIKES

SECTION 1. The UNION and its employees agree and pledge that during the term of this agreement and during any negotiations for any subsequent agreements between the UNION and the CITY, said UNION and employees will not cause, encourage or participate in any job action.

SECTION 2. A job action shall include, but not limited to: a strike, a sit-in, a walk-out, a slow down, a sick-in, any action that is a refusal to perform regular or assigned work, any willful absence from regular or assigned work or interruption or interference with the operation of any department in the CITY OF MARION, INDIANA.

SECTION 3. Employees who participate in any job action shall not be entitled to any benefits or wages whatsoever and shall be subject to summary disciplinary action including discharge.

SECTION 4. The CITY agrees that no lockout against any employee shall take place during the term of this agreement.

## ARTICLE IV - NON-DISCRIMINATION

SECTION 1. The provision of this agreement shall be applied equally to all employees in the bargaining unit without discrimination on the basis of race, creed, color, national origin, age, sex, marital status, political affiliation or union membership.

## ARTICLE V - GRIEVANCE PROCEDURE

SECTION 1. A grievance is defined as any dispute involving the interpretation, application or alleged violation of any provision of this settlement. Grievances and disputes that may arise shall be settled in the following manner:

> STEP 1: Within forty (40) working hours of its occurrence, the aggrieved employee shall discuss his/her complaint with his/her immediate supervisor. It shall be discussed verbally, if settled, no further action shall be taken. Any denial by supervisor shall be given to the employee in writing within forty (40) working hours. The employee shall have the right to be represented by a union steward.

> STEP 2: Provided the grievance is not settled satisfactorily in Step 1, the grievance shall then be submitted in writing within three (3) working days to the superintendent of the department who shall submit his/her written answer within three (3) working days after any meeting. The employee shall have the right to be represented by a steward.

> STEP 3: If the grievance is not settled in Step 2, it shall be submitted by the UNION President and aggrieved employee to the Board of Public Works and Safety. Said Board of Public Works and Safety shall make its ruling and notify the UNION President and the aggrieved employee within twenty (20) working days. The times indicated may be extended by mutual agreement. If either side is dissatisfied with the decision of the Board of Works, a request to go to Step 4 shall be made within fifteen (15) work days.

STEP 4: The Federal Mediation and Conciliation Services shall be asked to submit a list of (7) arbitrators. Each party shall strike one name from the list until one remains and he/she shall be the arbitrator selected by the parties. Such arbitration shall be binding on both parties. Employees whose presence is necessary at the hearing shall be in pay status during working hrs. The fee and expenses of the arbitrator shall be borne equally by the Union and the City. The Arbitrator will have no authority to change the agreement.

## ARTICLE VI - MISCELLANEOUS PROVISIONS

SECTION 1. UNION MANAGEMENT COMMITTEE: There shall be a UNION MANAGEMENT COMMITTEE consisting of the President of Local 3063 and the union steward for the department of which the President is not an employee so that each department may be fairly represented. Said committee shall meet at least once in every calendar quarter, such meeting to be held with the street superintendent or his/her representatives for the purpose of discussing and seeking solutions to the union/management problems. Advanced arrangements will be made for such meeting, at times and places mutually satisfactory to the parties concerned. Discussions and recommendations for consideration at said meeting shall be limited to the subject matter included in the agenda submitted by the UNION to the street superintendent or the superintendent to the UNION at least seven (7) calendar days prior to the agreed upon meeting date. The UNION shall keep the street superintendent informed as to the current identity of the UNION members on the committee.

SECTION 2. TEMPORARY HELP: Temporary employees (summer help and help for a limited period of time in case of emergency) shall be employed for a period of not to exceed ninety (90) days and shall only be employed providing that all permanent employees have full-time work available and that no employees are laid off at the time. Such employees are not covered by the provisions of this contract. However, any temporary employee who is continuously employed within the departments represented by the bargaining unit for one year shall be made full-time with benefits.

SECTION 3. UNIFORMS: The CITY shall provide uniforms and protective clothing for all street and sanitation employees. The City shall provide each employee with a supplemental clothing allowance in the amount of Four Hundred Dollars ($400.00) for 2003 and Four Hundred Fifty Dollars ($450.00) for 2004.

SECTION 4A. SNOW REMOVAL CREWS: The CITY shall provide one (1) person crews on all salt, sanding or snowplowing trucks. Said crew shall consist of employees in the Street Department operators/drivers laborer classification with a CDL, provided that they are available as needed. However, this section may not apply to the pick-up trucks and heavy equipment.

SECTION 4B. SANITATION CREWS: Each sanitation truck shall consist of three (3) person crews at all times said truck is in use, with the exception of the shuttle truck which shall have a

crew of one (1). If the City should obtain a two person low-entry, dual drive recycle truck, then such truck shall be staffed by two persons.

SECTION 5. HOLIDAY ASSIGNMENTS: If any employee is needed on a holiday, the person with the most seniority within the department willing to work shall be given the job. One week prior to the holiday, the department superintendent shall post a sign-up sheet for this purpose.

SECTION 6. DRIVING BONUS: Driving bonus shall be awarded to employees that meet these provisions:

1. A valid driver's license or a CDL license.
2. Operation of a CITY owned vehicle.
3. No involvement in an accident found to be the employee's fault for a period of six (6) months, (between January 1st to June 30th and July 1st through December 31st of each year.

Employees who qualify shall receive One Hundred Ten Dollars ($110.00) the first pay period in July and One Hundred Ten Dollars ($110.00) on the first pay period in January. However, if employee has a valid CDL he/she shall receive One Hundred Fifty ($150.00) the first pay period in July and One Hundred Fifty Dollars ($150.00) on the first pay period in January.

SECTION 7. ACCUMULATED TIME-RESIGNATION OR TERMINATION: If any employee quits, resigns and/or is terminated, the CITY shall pay to that employee accumulated time benefits. These shall be paid at the next regular pay period following the last day of employment.

SECTION 8. ACCUMULATED TIME-RETIREMENT OR DEATH: In the event that an employee retires or dies, the CITY shall then pay accumulated time. Those benefits shall be paid to the beneficiary or to the employee's estate.

SECTION 9. PRIVATIZATION: In the event that the CITY contracts out the services performed by the bargaining unit, then the CITY agrees to use reasonable best efforts to avoid decreasing the number of employees in the bargaining unit.

Where there is a reduction in the work force of sanitation employees resulting in a transfer to street department, the affected employees shall maintain bargaining unit status with Local 3063, city seniority, union pay, benefits and full time status.

Any affected employee, who has been transferred as a result of privatization or where a layoff occurs, shall have his/her qualifications reviewed prior to lay-off. Each person being considered for lay-off will be reviewed on a case-by-case basis.

The CITY agrees to notify the Union, a minimum of 30 working days prior to any privatization agreement. The CITY shall provide the Union with pertinent bid information and 20 work days will be allowed for the Union to cost analyze and submit a bid.

SECTION 10. VENDING MACHINES: The UNION shall be allowed to place vending machines at the street and sanitation department facilities at the street barn on Shunk Street, and to maintain and keep the profits therefrom, said maintenance and operation shall take place on other than City time. Upon the taking effect of this agreement, the UNION shall take whatever steps are necessary, if any, to assume ownership and responsibility for the machines and return to the CITY any deposits or money due the CITY.

SECTION 11. PROGRESSIVE DISCIPLINE: The City of Marion will take disciplinary action commensurate with the type and severity of offense committed by the employee.

A. Types of Offenses – The two types of offenses for which staff may receive disciplinary action are (1) minor and (2) major.

1. Minor Offenses:
   Steps:

   1st offense – documented verbal warning
   2nd offense – written reprimand
   3rd offense – 3-day suspension without pay
   4th offense - termination

2. Major Offenses
   Steps

   1st offense – written warning
   2nd offense – 3-day suspension without pay
   3rd offense – termination

B. Removal of offenses – Documentation of offenses shall be removed from an employee's personnel file after the passage of twelve (12) calendar months, for minor offenses, or twenty-four (24) calendar months for major offenses.

### ARTICLE VII - UNION MEMBERSHIP AND DUES CHECK-OFF

SECTION 1. After completion of the ninety (90) day probationary period, employees become eligible for union membership. Such decisions shall be voluntary and will not be a condition of employment with the CITY. The parties agree that no coercion will be applied in an attempt to force an employee to join or not to join the UNION against the employee's will. However, any eligible employee who voluntarily becomes a member of the UNION and who maintains his/her

6

membership shall remain a member for the duration of this agreement, except it is understood that any such employee may withdraw his/her membership at any time.

The UNION agrees to indemnify and hold the CITY harmless from any and all claims or rights of actions that may be hereafter asserted by any person now or hereafter employed by the CITY and which arises out of the inclusion or enforcement of this maintenance of membership clause.

SECTION 2. Upon receipt of voluntary written current signed authorization from employees who have completed their probationary period in such form as complies with the law of Indiana, who are covered by this agreement and who are members of the UNION, the employer shall deduct each month from the earnings of each of said employees an amount representing their regular, monthly dues for the preceding month, as specified by the UNION and shall remit such money, together with the appropriate records, to the designated UNION official. The employer shall be held harmless from any and all claims or liabilities which may arise under this paragraph.

SECTION 3. The employer agrees to deduct from the wages of any employee who is a member of the union a PEOPLE deduction as provided for in a written authorization. Such authorization must be executed by the employee and may be revoked by the employee at any time by giving written notice to both the employer and the union. The employer agrees to remit any deductions made pursuant to this provision promptly to the union together with an itemized statement showing the name of each employee from whose pay such deductions have been made and the amount deducted during the period covered by the remittance.

## ARTICLE VIII - RULES, REGULATIONS AND NOTICES

SECTION I. BULLETIN BOARDS: The UNION shall have access to a separate bulletin board (4' x 6') within the break room of the department to be used for the purpose of posting UNION notices.

SECTION 2. RULES: Before putting into effect any new or revised rules and regulations, the covered department shall inform the UNION, and if requested by the UNION, shall meet with the UNION representatives to discuss the purpose and reasons of such new or changed rules. The UNION shall have the right to offer suggestions as to any rule adoptions or changes.

SECTION 3. EMPLOYEE'S CHANGE OF ADDRESS: Employees shall notify the supervisor of change of address and/or telephone number within five (5) days after such becomes effective.

## ARTICLE IX - SENIORITY, TRANSFER, LAYOFF AND RECALL

SECTION 1. SENIORITY: Seniority within each classification shall be a factor in the promotion of an employee by the CITY to a higher rated job; provided the employee is capable of performing the work, and possesses the knowledge, training, and ability to do the job.

SECTION 2. When it becomes necessary to lay-off employees, the employee with the least seniority with the CITY shall be the first to be laid-off; provided, that employees retained on this basis are equal in so far as ability and capacity. When employees are to be recalled from lay-off, the inverse order of the lay-off shall apply, provided the employee is capable of performing the work.

SECTION 3. Employees may be granted military leave with benefits as provided by law.

SECTION 4. In the event a job classification covered by this agreement is to be filled, job openings shall be posted pursuant to the CITY'S AFFIRMATIVE ACTION POLICY. Employees covered by this agreement may make application in writing pursuant to the AFFIRMATIVE ACTION POLICY and according to their seniority, knowledge, training and ability. In the event that there is a job opening within the CITY and a present CITY employee applies for said job opening, that CITY employee shall be given first consideration for the desired position.

SECTION 5. Employees with seniority will be entitled to shift preference provided that any employee exercising his/her privilege shall be required to remain on the shift he/she has chosen for a period of sixty (60) days without further transfer.

SECTION 6. DEPARTMENTAL SENIORITY:

- A. Seniority shall date from the first day of continuous full-time employment with the department. The departments are 1) sanitation and street, 2) traffic, and 3) fleet maintenance.

- B. The seniority of an employee shall terminate under any of the following conditions:
    1. When an employee has been laid-off for a period of more than two (2) years or number of years of seniority.
    2. When a laid-off employee fails to give notice of intention to return to work within five (5) work days after the CITY has sent to his/her last known address a certified letter recalling him/her back to work, or five (5) work days after actual notice has been given, whichever is earlier.
    3. When he/she gives his/her notice, but fails to return within one (1) week after the aforesaid letter has been sent to him/her.
    4. When he/she resigns his/her employment with the CITY.
    5. When he/she is discharged for just cause.
    6. When he/she violated the conditions of his/her leave of absence.
    7. When he/she has been replaced for violation of the agreements contained in Article III.

8

C. The CITY will furnish an up-to-date seniority and job position list upon the request of the Union President or his/her representative quarterly.

SECTION 8. LAYOFFS:

A. Layoffs for lack of work shall be in accordance with the straight seniority rules, i.e., the employee most recently hired in the department shall be laid-off first, provided always the employees retained shall be qualified and capable to perform work available.

When adding to the work forces, those in the department most recently laid-off shall be the first in the department to be re-employed, if available, and capable and qualified for the available job.

B. When lay-offs for lack of work affect permanent full-time employees, the CITY shall notify the UNION five (5) working days in advance of the lay-off in order that an agreement on the application of the seniority provisions may be reached.

C. When lay-offs affect permanent full-time employees, any employee so affected shall have a right to "bump" any other employee in his/her department who is working with a lower classification, providing that the "bumping" employee must be capable and qualified for the job he/she is to assume.

SECTION 9. TRANSFERS: Any employee who transfers or is transferred from one department to another department does not take original department seniority with him/her to the new department. In the event that the transferee is laid off in his/her new department, he/she has the right to return to his/her old department and pick up his/her original seniority there, if there is an employee available with less seniority to be "bumped".

## ARTICLE X - VACATIONS

SECTION 1. Vacations shall be earned and taken as follows:

A. Employees hired after June 30th of each year shall receive zero (0) days vacation. Employees with six (6) months of continuous employment as of December 31st shall be entitled to five (5) days of vacation to be taken within the next twelve (12) months.

B. Beginning January 1st of second year of employment, employees shall be entitled to ten (10) working days of vacation to be taken within that year.

C. Beginning January 1st of five (5) years of employment, employees shall be entitled to fifteen (15) working days of vacation to be taken within that year.

9

      D. Beginning January 1st of ten (10) years of employment, employees shall be entitled to twenty (20) working days of vacation to be taken within that year.

      E. Beginning January 1st of twenty (20) years of employment, employees shall be entitled to twenty-five (25) working days of vacation to be taken within that year.

SECTION 2. Vacation time earned cannot be transferred from one employee to another.

SECTION 3. Employees shall notify their supervisor ten (10) working days in advance of their intention to take a vacation.

SECTION 4. Department Heads may deny an employee's request for a vacation for reasonable work related demands of the department.

SECTION 5. Employment must be continuous for vacation time to be earned (except in the case of authorized absence).

SECTION 6. Changes in type of CITY employment do not affect an employee's vacation right except as provided in this agreement.

SECTION 7. Vacation time earned which cannot be taken through no fault of the employee shall accumulate to the next vacation period only with approval of the City.

## ARTICLE XI - SPECIAL MEETINGS

SECTION 1. SPECIAL MEETINGS: In the event an employee or group of employees are required to attend a meeting other than a negotiation session, called by the superintendent or supervisor of the departments at a time other than regularly scheduled time of employment, said employee shall receive pay for attending such meeting at one and one-half (1 1/2) times regular rate of pay.

SECTION 2. UNION MEETINGS ON CITY PREMISES: The UNION shall make the request for the meeting space to the department head of the facility reasonably in advance of the dates and times of the Union meetings.

Union meetings shall be conducted during non-working hours. Attendance at such meetings shall be on the employees' own time.

Union meetings shall be scheduled and conducted in a manner that will not disrupt City business and will be consistent with reasonable City security policies.

SECTION 3. The AFSCME Local 3063 President, or his/her designee, may take an unpaid leave of absence to conduct Union business upon written request to the City from AFSCME Council 62. The reasons for such leave shall be union conventions, training, and participation in local state or national committee activities. Such leave requires approval of the City.

## ARTICLE XII - LEAVE OF ABSENCE AND FAMILY AND MEDICAL LEAVE ACT

SECTION 1. FAMILY AND MEDICAL LEAVE ACT:

A. The Family and Medical Leave Act of 1993 allows eligible employees up to a total of twelve (12) weeks of unpaid, job-protected leave. Employees are eligible if they have been on the City payroll for at least twelve (12) months and have worked at least One Thousand Two Hundred Fifty (1,250) hours during the twelve (12) month period preceding the request for leave.

B. Unpaid leave may be granted for any of the following reasons:
* To care for the employee's child after birth, or placement for adoption or foster care;

* To care for the employee's spouse, son or daughter, or parent who has a serious health condition; or

* For a serious health condition that makes the employee unable to perform the employee's job.

C. Requests are to be made in advance of the leave in writing to the Department Head and all requests will have to be approved by the Board of Public Works and Safety. Prior to the FMLA, the employee may use all accrued paid vacation time, personal leave, and sick days.

D. The employee ordinarily must provide thirty (30) days advance notice when the leave is "foreseeable". An employee shall provide a medical certification to Department Head to support a request for leave because of a serious health condition, and may require second or third opinions (at the employer's expense) and a fitness for duty report to return to work. If an employee requests a leave to care for a family member, the certification must confirm this is necessary and contain an estimate of the amount of time involved. When intermittent medical leave is sought, the certification must recite the anticipated dates and duration of treatment.

E. For the duration of the FMLA leave, the employee's health coverage, life, and vision insurance benefits will be continued.

F. Upon return from the FMLA leave, most employees must be restored to their original or equivalent positions with equivalent pay, benefits, and other employment terms. Failure to return to work on the return to work day shall be cause for termination.

G. During the medical leave, an employee shall not accrue vacation, sick, and personal hours.

H. FMLA shall be forward rolling, starting with the first day of FMLA and continuing forward (365 days).

## ARTICLE XIII - WORKING HOURS

SECTION 1. All production workers shall work an eight (8) hour day. Starting time shall be designated by the Department Head. Two (2) twenty-five (25) minute breaks per day shall be authorized, one (1) at 9:00 am until 9:25 am and the second at 12:00 p.m. until 12:25 pm.

SECTION 2. Employees may be requested, but not forced unless a declared emergency, to work overtime provided there are sufficient funds available to pay for such overtime at one and one-half (1 1/2) times normal rate.

SECTION 3. The board and/or department superintendent will give five (5) working days notice to any employee laid-off by reason or force reduction; except where lay-offs are ordered by an outside agency. Provided, however, that the policy of notice shall not apply in those cases in which an employee is laid-off for disciplinary reasons or discharged.

SECTION 4. In the event an employee is sent home before his/her full shift has been completed, he/she shall be entitled to four (4) hours pay if he/she has worked less than half his/her normal work shift and full pay for the day if he/she has completed more than half of his/her normal shift. This shall not apply to an employee sent home for disciplinary or medical reasons.

SECTION 5. OVERTIME: In the event an employee is called in from home on an after hour basis for overtime, then the employee shall be paid a minimum of two (2) hours pay at one and one-half (1 1/2) times the hourly rate.

## ARTICLE XIV - HOLIDAYS

SECTION 1. The Street and Sanitation Departments of the CITY shall receive the following paid holidays: NEW YEARS DAY, MARTIN LUTHER KING DAY, PRESIDENTS' BIRTHDAY, GOOD FRIDAY, PRIMARY ELECTION DAY, MEMORIAL DAY, INDEPENDENCE DAY, LABOR DAY, GENERAL ELECTION DAY, VETERANS DAY, THANKSGIVING DAY AND THE DAY AFTER THANKSGIVING, CHRISTMAS DAY AND THE DAY AFTER CHRISTMAS.

SECTION 2. In order to receive holiday pay, the workers shall work the day before and the day after said holiday.

SECTION 3. Street and Sanitation employees who work a Holiday shall be paid for hours worked at the rate of time and a half (1 1/2).

SECTION 4. No part-time employees shall receive overtime work before a full-time employee at either the Street or Sanitation Department.

SECTION 5. In the event that there is not a primary or a general election in any given year, the Mayor shall designate alternate days in lieu of Election Day as holidays. These days shall be known as AFSCME Day and City Employee Day.

## ARTICLE XV - PERSONAL DAYS

SECTION 1. Employees are hereby granted up to four (4) days of personal leave time on January 1st of each year for personal business, one of which shall be the employee's birthday. In the event the employee's birthday shall fall on a weekend or a holiday, then in that event said employee shall be awarded the next scheduled working day as his/her birthday. Personal leave time may not be used in conjunction with any other type of leave to extend that leave. No accumulation of personal days from year to year.

## ARTICLE XVI - SICK LEAVE

SECTION 1. Each employee of full-time status shall earn ten (10) sick days per calendar year. Any employee who is employed by the CITY shall begin January 1st with ten (10) days. Persons who become employees of the CITY in subsequent months shall begin with ten (10) days minus one-half day for every full month in the year preceding employment.

SECTION 2. An employee will only be paid for the days he/she is off for illness if the employee directly reports to the department head for which he/she works within one-half (1/2) hour after that department's normal starting time. Further, if an employee uses three (3) consecutive sick days, a written statement from a doctor must be presented to the employee's department head before the missed time can be granted as compensated sick leave. Such a statement may also be required by the department head if the department head has reason to believe that an employee is abusing the use of sick leave, e.g., chronic, periodic, or habitual absences. A statement may be required to contain the physician's assessment of the employee's physical ability to fully discharge his/her duties.

SECTION 3. Employees may accumulate up to seventy (70) sick days.

13

## ARTICLE XVII – INSURANCE

SECTION 1. LIFE INSURANCE: Full-time employees shall be entitled to Forty Thousand Dollars ($40,000.00) worth of life insurance effective January 1, 2003.

SECTION 2. HEALTH INSURANCE: Full-time employees shall be entitled to participate in group health insurance as per City policy.

SECTION 3. COMPENSABLE ON-THE-JOB INJURIES:

    A. Employees who may become injured on the job in an accident arising out of or in the course of his employment under circumstances which would qualify him for benefits under the Worker's Compensation Act or the Occupational Disease Act, should report the matter to their department head at once for instruction on procedure for medical care under the provisions of the Worker's Compensation Act of the State of Indiana.

    B. The reporting of all accidents to the department head or management supervisor is necessary and must be prompt and accurate in order to assure handling of claims.

    C. An employee injured on the job will not need to use any sick leave on the date of the injury to go see the doctor or otherwise to seek emergency medical care. On the other hand, if the injury is such that the physician releases the employee after the examination and simple treatment to return to work, the employee is expected to do so. The employee will receive full pay on the day of such an injury under these circumstances so long as the employee returns to work on that day if instructed by the physician to do so.

    D. For an on-the-job injury covered by this Agreement, an injured employee will receive full pay during the week. If Worker's Compensation later pays benefits to the employee for that week, those benefits will be reimbursed to the City.

## ARTICLE XVIII – BEREAVEMENT LEAVE

SECTION 1. In the event of a death in the employee's family, the employee shall be entitled to up to five (5) days leave with full compensation. Immediate family is defined as grandmother, grandfather, son, daughter, mother, father, brother, sister, spouse, father-in-law, mother-in-law, brother-in-law, sister-in-law, spouse's grandmother, spouse's grandfather, step-mother, step-father, step-children, step-brother, and step-sister. Bereavement leave shall not be charged against an employee's annual vacation time, provided that employee immediately notifies the department head as to bereavement leave necessity.

SECTION 2. Additional bereavement leave shall be at the determination of the department head. It is the general intention of this policy to allow employees' to be compensated while attending funerals of those closest to them. It is understood that there exist special circumstances where the employee may have just cause for requesting bereavement days in addition to those allowed in section 1 above; therefore, in such cases, the department head shall make a determination on a case by case basis and that determination shall be final.

## ARTICLE XIX - SALARIES

All full-time employees shall receive a Six Hundred Dollar ($600.00) increase in their base pay for the year 2003 and a Six Hundred Twenty-three Dollar ($623.00) increase in their base pay for the year 2004.

Longevity Pay increases $5 per year of service for the year 2003, and an additional $12.50 per year of service for the year 2004.

## ARTICLE XX - EFFECTIVE DATES

This contract shall be in full force and effect from January 1, 2003 through December 31, 2004 or until amended by agreement of the parties. The parties agree to discuss certification pay in 2003 for the 2004 contract year.

## ARTICLE XXI - POLICY ON ALCOHOL AND ILLEGAL DRUGS

SECTION 1. All Street and Sanitation workers shall comply with the CITY'S Drug and Alcohol Policy.

SECTION 2. Drug/Alcohol Testing may be conducted on Street and Sanitation workers post-accident, upon reasonable suspicion or randomly as per the current City policy. A minimum of 50% of the employees shall be tested at least once a year.

SECTION 3. All drug screen tests shall be conducted by medical laboratories certified by the Department of Health and Human Services (DHHS) or certified by a DHHS recognized certification program. The procedures utilized by the CITY in testing laboratories shall include an evidentiary chain of custody control. The split sample method of collection shall be used following prescribed testing procedures.

SECTION 4. Alcohol testing shall be done in the manner used to detect drivers operating a motor vehicle under the influence. Positive result of .04 or greater shall entitle the CITY to proceed with the sanctions as set forth in this Article.

SECTION 5. The results of the testing shall be delivered to the CITY and the worker tested. A worker who's confirmatory test result is positive shall have the right to request a certified copy of

the testing result in which the vendor shall affirm the test results were obtained using the approved protocol methods. The workers shall provide a signed release for disclosure of the test results. Refusal to submit to the testing provided under this agreement shall be grounds for discipline up to and including termination.

SECTION 6. Results of any drug test shall be verified as follows:

- A. If a drug confirmation test is positive, the Street and Sanitation worker may upon written request and at the worker's expense, have the split sample re-tested by a DHHS certified laboratory. This request shall be presented within seventy-two (72) hours upon being notified of a positive result.

- B. In the event the split sample test confirms the results of the first test, the CITY may proceed with a sanction as set forth in this Article.

- C. In the event that the split sample test contradicts the result of the first test, the split sample results shall be considered the final result. The results of this test, if positive, shall allow the CITY to proceed with sanctions as set forth in this Article. If the results are negative, the Street and Sanitation workers shall be given the benefit of the doubt and no sanction shall be imposed.

SECTION 7. Any Street or Sanitation worker who tests positive for the use of an illegal substance shall be subject, on the first occurrence, to participate in an approved rehab or detox program. Prior to testing positive Street and Sanitation workers may voluntarily participate in any rehabilitation or detoxification program. The rehab or detox program will be at the workers expense. A worker who participates in a rehabilitation or detoxification program will be granted a leave of absence without pay for the period of the rehabilitation or detoxification program. Refusal to participate or re-occurrence of positive testing results will result in immediate termination of employment.

SECTION 8. Costs of all drug screenings and confirmatory test shall be born by the CITY, except any test initiated at the request of the worker, which shall be at the worker's expense. Split testing charges will be paid by the City if results are negative and by the Employee if results are positive. All follow up tests are paid by the employee.

## ARTICLE XXII - COMMERCIAL DRIVERS EXAM

The CITY shall pay the cost of the Commercial Drivers License for all driver/operator employees of the Marion Street and Sanitation Department. This will also include the cost of the physical examination for all said driver/operator employees of the CITY as of the signing of this agreement. Further, the costs shall be paid only once. Any required renewal fees or any further physical examinations necessary due to equipment failure shall be paid by the CITY. However, in cases where the employee is culpable, the employee pays all fees and costs.

In the event a driver/operator employee is not successful in passing the commercial drivers examination the CITY will make a good faith effort to temporarily place the employee in another position until such time as the employee passes the examination within a reasonable time. The employee's pay will remain the same during that reasonable time period, not to exceed six (6) months. After that six (6) months period the CITY is under no obligation to continue the employment of the employee for employees hired after September 10, 2000.

## ARTICLE XXIII - SAFETY STANDARDS

SECTION 1. All drivers shall fill out a daily log and safety sheet to be turned in to the Superintendent of the department. Any unsafe equipment shall be repaired in a timely fashion. There will be a Safety Representative for each of the four departments to be trained in Safety procedures and certified. The individual will also be paid certification pay.

## ARTICLE XXIV - JURY DUTY

Time off with pay shall be granted to an employee who has been summoned for jury duty.

## ARTICLE XXV – RETIREE'S INSURANCE

A. The CITY agrees to provide group health insurance coverage to retired bargaining unit employees, which is the same or comparable to the coverage provided to non-retired employees, subject to the following terms and conditions: Only those employees who retire from the City of Marion on or after July 1, 1999, shall be eligible for group health insurance paid by the CITY.

   1. To qualify for group health insurance paid by the City, the employee must: Be under the age of sixty-five (65);

   2. Have completed at least twenty (20) years of service as a City of Marion employee on the effective date of the retirement.

   3. Be eligible to retire in accordance with full PERF Pension Plan applicable to the employee.

   4. The employee must make timely application and must meet all the requirements of the group health insurance plan. The employee retiree must not be enrolled in any other group insurance program or employer provided health insurance program.

   5. Any retiree who is receiving group health insurance paid by the CITY and leaves the plan will not be and shall not be permitted to re-enter.

17

6. Should a retiree become eligible for any state or federally funded health insurance program (i.e., Medicare), the retiree shall no longer be entitled to insurance paid by the CITY under this Article.

7. The CITY shall pay the full premium for the group health insurance policy for the retiree only.

8. The retiree shall be responsible for reimbursing the CITY and the health insurance carrier for any insurance premiums or health insurance benefits paid by either as a result of the retiree being improperly determined eligible for insurance due to the retiree's false statement.

B. Retirees' may include their spouse or dependents under their group health insurance plan, subject to the eligibility requirements of the health insurance carrier or carriers, and provided the retiree remains eligible for coverage. The full premium costs for retiree's eligible spouse and/or dependent shall be paid by the retiree. If a retiree fails to pay such premium in a timely manner as directed by the CITY, such insurance coverage will terminate and the spouse and/or dependents may not re-enter the plan. Should a retiree no longer be entitled to group health insurance paid by the CITY, the retiree may continue on the CITY'S group plan, subject to the eligibility requirements of the health insurance carrier or plan and provided the retiree pays the full premium cost.

C. All retiree insurance benefits are specifically limited in duration to the term of this agreement, and may be modified in subsequent agreements upon acceptance by the employer and the UNION. The specific insurance carrier or carriers shall be at the discretion of the employer.

## MISCELLANEOUS

A. All terms of this Agreement are subject to actions of the Marion City Council and the parties expressly agree to hold harmless the other party, for any action, or failure to act by the Council which violates, or which causes violation of the term of this Agreement.

B. Severability - Any provision of this Agreement in conflict, or hereafter found to be in conflict with any law, shall not render void this entire Agreement, but the remainder thereof shall remain valid and binding upon the parties hereto.

C. Incentive Pay – The parties agree to continue an incentive pay program. Monies for the program shall be contingent upon the departments finishing the fiscal year under budget. The parties agree to continue an Incentive Pay Committee, which shall be

responsible for identifying budget areas within which the incentive pay program shall apply as well as for establishing guidelines and rules on how the monies will be distributed. Committee shall consist of three (3) representatives appointed by each party. Forty percent (40%) of all monies left in the targeted departmental budget areas each year shall be appropriated to the Incentive Pay Program.

The Undersigned hereby agree to the terms and conditions contained in this labor agreement on this 28th day of October, 2002.

_____
Mayor, City of Marion

_____
AFSCME Local 3063

_____
Corporate Counsel, for the City of Marion
Approval as to form

_____
AFSCME Local 3063

_____
Marion Board of Public Works and Safety

_____
AFSCME Local 3063

_____
AFSCME Local 3063